## Thomas K. Adams v. Henry M. Bradley and others.

*Fraudulent grantee to hold in trust for person "equitably entitled.* — Two tenants in common agreed to hold separate parcels of their land in severalty, but no releases were executed. Each afterwards sold his parcel, giving a deed of the whole interest as if he had had a release from his co-tenant. A grantee of one of them sold, taking back a mortgage for the purchase price, and the other, by an understanding with the mortgagor, gave a deed to the mortgagor's brother, with the intention thereby to perfect the title conveyed by his co-tenant. A small consideration was paid for this deed, which, however, the grantor did not demand. Proceedings being taken to foreclose the mortgage, this deed was set up as a defense to one half its amount, on the ground of failure of consideration. It was held, that the grantee in the deed, under the circumstances, took it as a trustee, and the deed must be regarded as a mere release of the grantor's interest, in pursuance of the original understanding between the co-tenants.

*Parties to foreclosure suit.* — The grantee in this deed was held to be a proper party to a suit to foreclose the mortgage, in order that he might be decreed to make his deed properly operative as a release.

*Title to land: the deeds presumed to show its actual state.* — A partnership of three persons owned lands, which, however, had been conveyed to the three without any reference in the deed to the partnership. It was held that a mortgage given by one of the three on an undivided one-third of the land, to one who had no notice that it was partnership property, was not affected by the partnership equities. Such mortgagee had a right to assume that the common possession of the three was under and in accordance with the record title, and not under some other and parol arrangement.

*Foreclosure suit: multiplicity of issues.* — Three persons who had held land in partnership sold it, and gave separate conveyances to the purchaser, who, in pursuance of an arrangement to that effect, gave back a mortgage for the purchase price to one of them. The purchaser afterwards bought up a mortgage given by one, on an undivided one-third of the land, and sought to make a set off of this in a suit to foreclose his own mortgage. But the set off was refused, the Court holding that claims under this mortgage could be better litigated in a separate suit; and the foreclosure decree was so framed as to leave this prior mortgage untouched.

*Parties to suit in equity: cestui que trust.* — In a suit by a trustee to reduce the trust fund into his possession, the cestui que trust need not be made a party. Sill v. Ketcham, Har. Ch. 423; Morey v. Forsyth, Wal. Ch. 465; Martin v. McReynolds, 6 Mich. 70.

*Heard April 26th, 27th and 28th. Decided May 10th.*

Appeal in chancery from Bay circuit. The facts appear by the opinion.

*W. L. Webber* and *G. V. N. Lothrop* for complainant.
*J. G. Sutherland* for defendant.

Campbell J.:

This bill is filed to foreclose a mortgage, made by Lot Frost and Charles Bradley to complainant, in pursuance of a contract of purchase made with complainant, and George S. Lester and Mark Carrington, who shortly previous to the date of the contract had dissolved partnership.

The property mortgaged had been used by the partnership firm, under the name of Lester, Carrington & Co., and consisted of the mill property, which had been used for lumbering purposes, and of several other parcels of less value.

The mortgage was dated May 1st, 1855, and was made to Adams individually, as he was authorized to settle up the partnership concerns.

The three Bradleys answer separately. Several defenses are set up, and it will be necessary to refer to them singly, in order to make the case intelligible.

At the time when the transactions took place with Frost and Bradley, the title to one undivided half of the mill lot was defective. It had originally been owned by John P. C. Riggs and Henry Riggs, for whom their father purchased two lots, intending one for each, but having them conveyed in common. This mill lot was conveyed by John P. C. Riggs, as his own, in 1842, by title to which George S. Lester succeeded by purchase in the spring of 1854, when the lot was vacant and unimproved, and worth about one hundred dollars. This purchase was made with a view of erecting a saw mill, which was done at the expense of Lester, Carrington & Co., during the

same year. Lester, in 1854, conveyed to Carrington and Adams each one undivided third part of the lot, and they all subsequently conveyed to Frost and Bradley by separate deeds, the mortgage now in controversy being given for purchase money. Frost conveyed his interest to Charles Bradley, who conveyed the entire interest to Henry M. Bradley, December 31, 1857. In April, 1859, Henry Riggs and wife conveyed an undivided half of the mill lot to Nathan B. Bradley, who now claims to own it, and the other defendants insist that, as an outstanding and valid title to one half of the mill lot, it should procure an abatement of one half of the mortgage, on the ground of failure of consideration to that extent.

It appears clearly in the case that, in 1859, prior to the conveyance to Nathan Bradley, Henry Riggs and John P. C. Riggs came to an understanding, whereby each was to convey to the grantees of the other his undivided interest in the lots which had been theretofore conveyed, whereby Henry was to release his interest in this mill lot, and John was to release his interest in the other lot which Henry had sold. It appears that the lots purchased for John and Henry Riggs, by their father, although never actually partitioned, had been conveyed in severalty, as if they had been. In pursuance of this understanding Henry Riggs conveyed his half of the mill lot to Nathan Bradley, who represented that he wanted it to complete · the title derived from John P. C. Riggs. The consideration paid was fifty dollars; which, however, was volunteered by Nathan, — Henry Riggs not requiring it — and which was really paid by Charles or Henry M. Bradley, it is not very clear which. Charles Bradley had consulted counsel about buying it, and we are satisfied it was obtained by an understanding among the defendants. As against complainant or the firm of Lester, Carrington & Co., we are satisfied this conveyance to Nathan Bradley must be held to enure to the benefit of the mortgage title. It was so

designed by Riggs, and he would not have conveyed it otherwise. Nathan Bradley took it as a mere trustee, and it must be regarded as a mere release, which he will be decreed to make operative. Any other construction would give effect to a gross fraud. He is properly made a party, for the purpose of compelling this redress.

A second] defense relied upon by Henry M. Bradley, to reduce the mortgage, is a prior mortgage now owned by him, given by George S. Lester to Thomas J. Stead, of Providence, Rhode Island, December 1, 1854, upon an undivided third part of the mill premises. Complainant also seeks in his bill to have this Stead mortgage postponed to his, on the ground that the property was partnership property, and was therefore subject to all the partnership equities. The mortgage to Stead was made for a valuable consideration, and in good faith so far as actual notice is concerned. The title had, by the act of the partners, been kept separate. The original title was purchased in Lester's name, and not in that of the firm, and he subsequently deeded to Adams and Carrington separately, each an undivided third, making no reference in the deeds to any partnership arrangement.

Without undertaking to determine whether, under such circumstances, actual notice of the partnership would have affected the incumbrancer, we are satisfied that where the record shows a right to a possession as tenants in common, a purchaser or incumbrancer is authorized, without actual notice, to assume that the common possession is under and in accordance with the record title, and not under some other parol arrangement. We think this mortgage cannot therefore be postponed to that of complainant. But we are also of opinion that it can not be set off against complainant's mortgage.

The Stead mortgage is a private claim against Lester, and is a lien on nothing but the undivided third part of the property. The conveyances to Frost and Bradley were

made by each tenant in common separately, and neither Adams nor Carrington covenanted, except as to their own shares, which were unincumbered. And if any liability remains under the original contract of sale, Adams has been expressly released from it.

Henry M. Bradley must be left, therefore, to his remedy on the mortgage itself, and, as it is a prior mortgage, and the equities can not be cut off by this proceeding, the decree will, as to one undivided third part of the title, be made so as to leave this mortgage untouched. It can not be litigated in the present suit, without introducing collateral issues, which can be better disposed of separately.

The only remaining questions relate to the mortgage sought to be foreclosed in this suit.

The bill was dismissed below, because Lester and Carrington were not made parties. This bill is filed to collect a debt, and not to settle the rights of *cestui que trusts* in its proceeds. No controversy can arise here between Adams and his late partners. It has always been settled as the rule in this State, that, in a suit by a trustee to reduce the trust fund into his possession, the beneficiaries need not be brought in:—*Sill v. Ketchum, Har. Ch.* 423; *Morey v. Forsyth, Wal. Ch.* 465; *Martin v. McReynolds*, 6 *Mich.* 70.

The only remaining inquiry is concerning the amount due. Three notes were given of $2,440 14 each. The third note remains entirely unpaid. Upon the first note payments were made, which reduced the principal to $704 17. For this amount, Frost and Bradley executed, as collateral, a new note, which when paid was to apply in satisfaction. This new note was indorsed by Adams, and held by Simeon Folsom when this suit was commenced, but has since been taken up by Adams as indorser. It was objected that Folsom should have been made a party. But as Adams held the securities in his own name, the rule above referred to rendered it unnecessary. And as at the time

when this fact came out it also appeared that Adams had become reinstated as owner, it may be doubted whether, under any circumstances, an amendment would have been ordered, which had become immaterial.

The principal sum of $704 17, with interest from May 15th, 1857, remains due on the first note, making, May 1st, 1864, $1,047 17.

On June 29, 1857, the second note had been reduced down to $625 17, and was then held by the Bank of Macomb county, with Adams's indorsement. A draft was given by Bradley for $1000 which, if paid, was to cancel this balance. It was not paid, and Adams was obliged to take it up. Upon the second note there is due, therefore, $625 17, with interest from June 29th, 1857, making, May 1st, 1864, $924 45.

Upon the third note, there is due $2,440 14 with interest from May 1st, 1855, making May 1st, 1864, $4,007 42.

A decree must be entered reversing the decree below, and declaring that the title of Nathan B. Bradley is subject to this mortgage, and requiring him to release to the purchaser at the foreclosure if the property is sold under this decree. Defendants are to pay $5,979 04, with interest from May 1st, 1864, and costs of both courts, in three months, and in default thereof the property is to be sold in the usual way.

The undivided one-third of so much of the property as is covered by the Stead mortgage is to be sold subject to the lien of that mortgage. The bill to stand dismissed without costs as to Thomas J. Stead, who has no further interest, and who has not appeared. Nathan, Charles and Henry Bradley to be personally liable for costs if there is any deficiency. The decree to be transmitted to the Court below for execution.

The other Justices concurred.