Smith, J.
The petition of the plaintiff in error in this case alleges as reasons why the judgment of the court of. common pleas should be reversed that the court erred' in admitting evidence offered by plaintiff against him; in rejecting evidence offered by him; in the refusal to charge the jury asreqúested, and in the charge given to the jury, that the verdict was against the law and the evidence,, and that the damages awarded were excessive.
The plaintiff below sought to recover from the defendant damages for the breach of a marriáge contract. In her petition she averred that about, 1891, she and the defendant became engaged to be married; that she has always been ready to fulfill the contract on her part, but that the defendant has refused to carry out the contract on his part, to her damage in the sum of $35,000.
The. answer of the defendant was a general denial, thus putting in issue all the material averments of the petition.
At the trial, the plaintiff, who was examined as a witness in her own behalf, testified clearly and explicitly that an engagement of marriage had been entered into between herself and the defendant about the time, and as alleged in her petition, and that for several years before that time he had visited her as a suitor for her hand, and that until the time named, no distinct arrangement for their marriage had been made, yet it was recognized by both of them that there was to be a marriage and that their conduct during this time, as well as for some time after the engagement, was that of affianced lovers, waiting for the consummation of their engagement. And we think *573 that it, may fairly be said that a perusal of the very many letters of the defendant to her, offered in evidence, written during the intimacy, will convince almost any one, that these statements of the plaintiff as to the relations existing between them, and that there was a contract of marriage between them, were true. And we think it further satisfactorily appears, that though no definite period had ever been fixed for their marriage, it was the understanding that it was to be within a reasonable time, to be fixed by the defendant; but that he, without good cause, saw proper to put an end to the arrangement, and under circumstances which released the plaintiff from the obligation to make a formal request or demand upon him to fulfill his contract, and that she was justified in law in bringing the action when she did. It is true that the defendant as a witness denies the making of such a contract, and therefore denies that he broke it, but if the case stood alone on the question whether the verdict of the jury in finding that there was such á contract of marriage between the parties, and that there was a breach of this contract by the defendant, we would not hesitate for a moment to uphold, it, and under all the circumstances disclosed, for a very substantial amount. Whether the verdict for $10,000 rendered in this case was so excessive that it should be reduced, will be referred to hereafter.
But on other grounds it is strenuously urged by counsel for plaintiff in error that the judgment rendered against the defendant was wrong and should not be allowed to stand, for the reasons that in the rulings of the judge who presided at the trial, there was error greatly prejudicial to the rights of the plaintiff in error, and one of the principal grounds assigned was that the court, over the objection and exception of the defendant below, allowed wholly incompetent evidence to go to the jury, and excluded evidence offered by him that was entirely competent.
The evidence so admitted over the exception of the defendant was of this character. The plaintiff, while being exam *574 ined in chief, testified in regard to conversations had by her, with persons, strangers to the action, and concerning the engagement said to have existed between herself and the defendant, and she was also allowed to offer the testimony of the persons with whom she conversed, and they were permitted to state what she said to them, and what they said to her in relation thereto, and that many other persons talked about this engagement as subsisting.
For instance, the plaintiff, not being content with the direct evidence offered by her that there was a clear and explicit contract of marriage between her and the defendant, and her full account of the intimacy which existed between them for years, and of his expressions of affection towards her verbally and in writing during all of these years; and that she was received and treated by him and his family as his affianced wife, saw proper also to offer evidence of this character. She was inquired of whether during the time she was so engaged to the defendant, she had had conversations with Mr. Arnold and Mr. Julian (who were employed with her by the firm of Stribley & Co., of which firm the defendant was a member), in regard to her engagement with the defendant, and as to her intention to attend the marriage of a sister of Mr. Stribley to which it seemed she had been invited. She was allowed to testify that she had held such conversations with them, and to give the language used by them and by herself, the defendant not being present. She said that they inquired of her if she was going to the wedding, and that she siad that she expected to do so, but that she assigned no reason therefor. That Arnold said to her that it was a very good idea to go, and thus to become acquainted with the Stribley family. That Arnold spoke of her going to be married to the defendant, and of her going to live with the family of his father. That he said that he had heard that she and the defendant were going to be married, but did not say where he had heard it, but said that Stribley needed to be congratulated, as he was getting the best of the deal. She *575 also testified that Julian was present and coincided with what Arnold said. She further testified to a conversation between herself and Mrs. Meyer, a sister of defendant, in which Mrs. Meyer told her that her brother Will, (the defendant), had asked her to invite the plaintiff to her wedding, and that she had said to him, that if he was engaged to her it was all right, but if not that it would look too pointed, because she had never visited at her house, but that her brother had made no reply to this remark. In addition to this Arnold was allowed to testify that in a conversation he had -with the plaintiff, about October or November, 1892, she told him that she was engaged to Stribley, and expected to be married, and then in substance gave the conversation testified to by the plaintiff. And Julian testified that about the time fixed by Arnold, the plaintiff told him that it was her last day in the office, and that she was going away to be married, and he further testified that there were probably fifteen or twenty office employes and salesmen in the office of Stribley & Co., and that there was not one of them who did not discuss the engagement, and further stated that it was generally known by everybody in the office, and as being a settled fact that such engagement existed. All of these .separate items of testimony were objected to by the counsel for the defendant, and the objections were overruled by the court, and due and proper exceptions entered in every instance. There was other testimony of conversations with other persons which was admitted, but as the foregoing present squarely the legal proposition involved, we do not deem it necessary to refer to them.
Was such evidence competent or admissible for any purpose, or on any ground ? The bill of exceptions in one instance states that the presiding judge said, in ruling on the question of the admission of the evidence of Arnold before given, that it was admitted as bearing on the question of damages, and that the conversation with Mr. Meyer was received for the purpose of showing knowledge of what, was not stated. If *576 admissible for any purpose, however, there was no error in receiving it. But was this the case?
It is-certainly a settled doctrine of the law, that as a general rule “ the statements of a party in regard to the subject-matter of his own suit are inadmissible unless introduced by his adversary.” Or, in other words, “that the declarations of a party are admissible in evidence against him, but not in his favor.” And it is equally clear, as a general rule, that a witness is not to be permitted to state what a stranger to the record may have said in regard to the subject-matter under inquiry. “ If the law permitted facts to be proved by evidence of what others said, the proof in a cause might be made up of the sayings of third persons not under oath, and not subject to cross-examination. Such testimony is totally inadmissible.” Swan’s Treatise, 164.
We understand, however, the claim of the counsel for defendant in error to be, that all of the evidence complained of was properly received under the well known exceptions to those rules. And, as to proof of the declarations of the plaintiff herself, that in cases like this, they- are competent to show the acceptance by the plaintiff of the offer of marriage made to her, even if made in the absence of the other party. There is no question whatever, but that under certain circumstances this may be done. This is clearly established in this state by the decision of the Supreme Court in the case of Wetmore v. Mell, 1 Ohio St. 26, which, so far as we know, stands unmodified and unchanged. It was there held that when a promise of A. to mary B. is shown, evidence that B. received his attentions for years, and prepared for her marriage by procurring bedding, etc., and of B’s statement to her sister at the time explanatory of such acts of preparation, is competent to show her acceptance of such promise.” The syllabus here quoted, as well as the language of Judge C@ravin, who announced the decision of the court, bases the admissibility of such declarations upon the familiar doctrine of res gestee, which is thus stated by Judge Swan in his Treatise, page 164, under *577 the head of “Proof of what was said when an act was done:” “ It is obvious that what a person says at the time he does an act, explains the act itself and his intention. When, therefore, an act material to the controversy is proved, what was written or spoken at the time the act was done, is in general inseparably connected with, and indeed, forms a part of the act itself. These and the other surrounding circumstances forming a part of the act or transaction are all admissible in evidence, according to the degree of their relation to the material act or fact to be proved.”
Rut how can this doctrine be made to apply to any of these conversations or declarations of the plaintiff to which reference is made ? What act indicative of an acceptance by her of an offer of marriage made by the defendant was being done' at that time? There is no pretense that it was more than a casual conversation, in the case of Arnold and Julian with persons not members of her family, and not in regard to any act in which she was engaged at the time. Julian testified that she said she was engaged to Stribley, and was going to leave the store to be married. The first of these statements is a declaration of a past event, and the other the expression of an intention to do something in the future. Can it be possible that a person can thus make evidence for himself or herself by a statement to any number of persons that a marriage engagement existed between himself or herself and another person ? It seems clear that this should not be allowed. Or how do the mere statements of Arnold, or Julian or Mrs. Meyer, as detailed by the plaintiff, became competent against the defendant, when made in his absence ? They would seem to be mere hearsay and totally inadmissible as tending to prove the truth of the statement made, or for any purpose that we can imagine.
Counsel for defendant in error cite two cases in support of the admissibility of such declarations of the plaintiff, viz. 52 Mich. 357; 2 Ind. 402. In the first there is nothing whatever to show that the statements made to the family of the plaintiff that *578 an engagement subsisted between her and the defendant, were made by her. For all that appears they may have been made by the defendant himself, or by the two. The inference to be drawn from the language of the court is that they were made by him ; for it is substantially held, and that is the point in the case, that where the engagement was thus announced, and presumably by him, the fact that he acknowledged it and made it public, and subsequently broke his contract, thus adding to the mortification of the plaintiff, would be good ground for greater damages. In the Indiana case, the court say that the plaintiff will be permitted to prove declarations made by her to members of her family while she was receiving-plaintiff's visits. Under what circumstances, however, does not appear. But the ease in 1 Ohio St. referred to, puts the doctrine on what we esteem to be the correct ground, and does not sanction the introduction of evidence like that admitted in this case.
It is further urged that the trial court erred in rejecting evidence offered by the defendant. The question arose in this way. The plaintiff', while introducing her evidence in chief, called Mr. Julian, who testified that he had had frequent conversations with members of the Stribley family (naming them), in regard to the engagement claimed to exist between these parties; that “ it was discussed several times — every time he went there for six or eight months, or may be a year. They discussed it rather freely, and intimated in a general way that the thing had been decided upon by the young man and his father; that it was rather against their wishes. They rather bemoaned the fact that it was so; that it was forced upon them."
The evidence thus offered in our judgment was mere hear- ' say, and should not have been admitted, but it -was received. The defendant, when he came to offer his evidence, called Miss Ida Stribley, one of the persons mentioned by Julian as having had these conversations and discussions with him, and sought to disprove the statements made by him. She was al *579 lowed to state that she never had any conversation of that kind with Julian concerning the engagement between the parties as having been decided upon by the young man and his father; but she was not allowed to answer questions put to her as to whether she had said to Julian that the engagement was against her wishes, or that she bemoaned the fact that there was any such engagement, or that it was forced upon them, and exception was taken.
There can be no question, we think, but that the defendant should have been allowed to have an answer to this question. The form of the question was not objectionable, as leading, as the rule is undoubted that where a witness states that where certain language was used by another person, such person may be called and inquired of if he used that identical language, and he is not simply to be inquired of as to what he did say. Nor is it true, as claimed by counsel for defendant in error, that it is necessary to ask the time and place where such statements were made. This is only necessary to be done when laying a foundation for impeaching evidence, which was not the case here. Nor can the exclusion be justified upon the claim made that the question had before been answered. The exception to the action of the court in this regard however, does not seem to have been properly saved, as no statement was made by the defendant as to what he expected to prove by the answer to the question, if given, and it may be that she might have answered it in the affirmative.
Exceptions were also taken to some parts of the general charge of the court to the jury, and to the refusal to give each of the six special charges asked by the defendant. We refer to such of the questions thus raised as seem to us important.
One of the exceptions taken to the general charge was to that part of it which says that “ there may be implied contracts of marriage as well as implied contracts as to other questions. Contracts of marriage are sometimes the result of the conduct of the parties.”
Our understanding of the law on this point is, that a mar *580 riage contract is one that is expressly made between the parties, and is not one implied as a matter of law from proof of other facts, as of frequent visits by the one to the other, or of expressions of affection by each to the other; those may well exist without there being a contract of marriage. But it is not always necessary to show by testimony the actual speaking of the words which make the promise ; but they may be inferred or implied from other facts proved, which fairly lead the mind to the conclusion that there was such a mutual promise. It is doubtful, therefore, whether the language of the court was strictly accurate on this point.
Exception was also taken to the charge of the court as to the measure of damages in a case of this kind, and it is strenuously urged that it was prejudicial to the rights of defendant. We may say that the question of the admission of evidence as to the value of the estate of the defendant, and if admissible, how it is to be shown, was referred to by the court in its charge to the jury, and very fully by counsel in their arguments to this court, and they differ widely in regard thereto. Our view as to this matter is this: That in an action to recover damages for the breach of a marriage contract, it is entirely competent for plaintiff to offer evidence as to the value of the estate of defendant, as well as of his family and social relations for the reason, in the first place, that it is an action in which on a proper showing the plaintiff is entitled to punitive damages, and when this is the case, it is the law of this state that evidence as to the value of the estate of the defendant is admissible. See Hayner v. Cowden, 27 Ohio St. 292.
But it is competent for a better reason, even where punitive damages would not be proper. The measure of compensatory damages is the loss which the plaintiff would suffer by the breach of the contract. If the defendant is a.man-possessed of a large estate, it would seem clear that his loss would be greater than if he was in indigent circumstances. The reason and propriety of allowing evidence of this character are so clearly and forcibly stated in the decision of the case of Ben *581 nett v. Bean, 12 Mich. 846, and quoted in Sutherland on Damages, Vol, 398, that we simply refer to it, as expressing our view on the question. See, also, 2 Sedgwick on Damages, 296.
And while on the subject of damages we may say that it seems to us that the objection made by the counsel for plaintiff in error to the charge of the court on this subject has some foundation. The presiding judge, in effect, said to the jury that the damage in cases of this kind is not confined to the actual pecuniary loss suffered by the plaintiff, and this is correct ; for exemplary and punitive damages may in a proper case be awarded. But he proceeds to say that in addition to the bare pecuniary loss suffered by the plaintiff, if she was entitled to recover, the jury might consider her loss of time by reason of the breach of the contract on the part of the defendant, “ any expenditures of money by her which grew out of the engagement ”; the loss of a permanent home, if shown; of the loss of any worldly advantage which might have accrued to the plaintiff from her marriage to the defendant; the wounded feelings or affections, mental suffering, humiliations and wounded pride of the plaintiff caused by the breach of contract. It is true that all of those matters may properly be taken into the account in fixing the amount of the damages which should be awarded against the defendant; but it seems to us that taken together, they afford the basis on which the jury should fix the pecuniary loss the plaintiff has suffered, and that allowance is not to be made to her for each of these elements of damages, in addition to the pecuniary loss suffered by her. And as to one of the special matters named by the court to be taken into account in computing the damages to the plaintiff, viz : “ the expenditure of money which grew out of this engagement, by the plaintiff, we think it was not properly limited by the charge. There is no statement of the purposes for which such expenditures might properly be made, or a limitation of the damage to be allowed therefor to the loss which accrued to plaintiff by reason thereof. Evidently, *582 if a person in contemplation of marriage purchased clothing, furniture or household goods, or a home, extrinsically valuable in themselves, and which would command in the market the amount paid for them, the whole expenditure ought not to be allowed for, but only what the loss to the plaintiff by reason thereof would be.
Thornton A. Hinkle, and C. W. Baker, for plaintiff in error.
Cabell & Gholson, for defendant in error.
Exception was taken to the refusal of the court to give the-six special charges asked by the defendant. We will only say that in our judgment the first of the six was the only one the court was required to give. The others, either for the reason that they were substantially given in the general charge, or that they did not contain proper limitations, were not erroneously refused.
It is hardly necessary, in view of what has been said, and of the conclusions at which we have arrived, to say much on the question of excessive damages. In view of the fact that the defendant has denied in his pleadings and testimony that he was ever engaged to this plaintiff, thereby bringing some disrepute upon her, and of the proof in the case as to the relations of these parties for several years, and that the jury have found that there was a marriage contract between them, and that it was broken by the defendant, without cause, a reviewing court would be very loth to reverse the judgment on the ground that excessive damages were awarded, unless it appeared that it was produced by-passion or prejudice of the jury. In this case the evidence showed that the defendant was one of three partners in a large establishment, the capital stock of which was $200,000. If he was the owner of one-third of this partnership, as the law might imply, no proof to the contrary having been introduced, we would not say that the damages were excessive, or that a verdict for the sum of $10,000 showed passion or prejudice on the part of the jury. But on the other grounds stated, we think it does appear that error intervened in the case to the prejudice of the defendant below, and the judgment will be reversed, and a new trial awarded.