MILLER *v.* McLAUGHLIN.

MORTGAGES—FORECLOSURE—MULTIFARIOUSNESS—PARTIES.

A bill to foreclose a mortgage is not multifarious for making
former owners of the mortgage, who have guaranteed pay-
ment of the principal and interest of the mortgage debt, and
also conveyed certain other lands to secure such payment,
parties defendant, together with persons who have given or
held additional security and subsequent mortgagees and gran-
tees, where one and the same debt is secured by the original
mortgage and all subsequent agreements.

Appeal from Wayne; Hosmer, J. Submitted January
13, 1903. (Docket No. 29.) Decided February 3, 1903.

Bill by Sidney T. Miller, trustee, against Joseph R.
McLaughlin, Robert J. McLaughlin, Collins B. Hubbard,
Anna Georgina Hubbard, George Dingwall, and others,
to foreclose certain mortgage securities. From an order
overruling demurrers to the bill, defendants Hubbard and
Dingwall appeal. Affirmed.

This is a suit to foreclose certain mortgage securities.
The bill is long, and sets forth in full the various instru-
ments which are the subject of controversy. The follow-
ing brief statement, however, is sufficient to an under-
standing of the question raised by the defendants:

1. A note and mortgage in 1893 were made by the
defendants McLaughlin, together with two others (Ye-
mans and Owen), to Margaret Woodbridge. Yemans
parted with his interest in the land, and died some time
afterwards, and Owen died, leaving a widow, now defend-
ant Louise M. Jebb. The debt was originally for $121,115,
but had been reduced to about $118,000 before the mort-
gagee transferred it.

2. Margaret Woodbridge sold the note and mortgage to
Collins B. Hubbard and George Dingwall July 24, 1895.

A day later they, in turn, sold to George L. Beecher and Luther S. Trowbridge, administrators, etc., and at the time of sale gave a written guaranty of the payment of both principal and interest. This guaranty runs from Hubbard and Dingwall to Beecher and Trowbridge and their assigns. Margaret Woodbridge, as further security, and at the same time, conveyed by warranty deed to the Union Trust Company of Detroit certain lands set forth in the declaration of trust made by the said Margaret.

3. Contemporaneously with the guaranty, and as a security for its fulfillment, a deed was given Beecher by Hubbard and wife and Dingwall and wife of certain lands in Detroit, and Beecher gave back a memorandum stating that the lands were held by him as security for the debt and for the performance of the guaranty agreement.

4. Edmund J. Owen, one of the original mortgagors, died, and the entire debt was proved against his estate. On December 1, 1896, an arrangement was made between Beecher and Trowbridge, on the one side, and all of the parties liable on the debt, on the other side, by which the claim against the estate was withdrawn, and Mrs. Owen and John V. Moran, who had bought an interest in the land, became personally liable for the debt, and all existing agreements were continued in force. Hubbard and Dingwall were parties to the agreement.

5. On September 9, 1898, the complainant in this suit bought the chain of security, and another agreement was executed, which Hubbard and Dingwall signed. This agreement transferred the guaranty and security from Beecher to complainant, and preserved in force all securities, so far as here concerned.

Mrs. Dingwall died before foreclosure.

To the bill asking the foreclosure of this debt and relief against the various debtors, the defendants Hubbard and wife and Dingwall interposed demurrers for multifariousness, claiming they were interested only in the land described in the instruments referred to in paragraph 3 of this statement. Decree was entered overruling the demurrers.

*Miller, Smith, Alexander & Paddock*, for complainant.

*Earl D. Babst* (*Willis G. Clarke*, of counsel), for appellants.

GRANT, J. (*after stating the facts*). One and the same debt is secured by the original mortgage and all the subsequent agreements and deeds set up in the bill of complaint. They are interwoven with each other, and the last agreement made recited them all, and preserves them all in force. All these agreements relate to, and all parties are interested in, the same subject-matter,—some as guarantors, some as having given additional security, and some as subsequent mortgagees or grantees. Besides, Hubbard and Dingwall, by their agreement of July 25th with Beecher and Trowbridge, were personally liable for the debt under their guaranty, and in it had provided for a foreclosure of the mortgage deed given by them to Beecher. We think the case is ruled by *Torrent* v. *Hamilton*, 95 Mich. 162 (54 N. W. 634), and authorities there cited, and *Michigan State Bank* v. *Trowbridge*, 92 Mich. 217 (52 N. W. 632). It is also clearly within the statute (1 Comp. Laws, § 519), which is quoted in full in *Michigan State Bank* v. *Trowbridge*, 92 Mich. 222 (52 N. W. 633). The case of *Hart* v. *McKeen*, Walk. Ch. 417, has no application. In that case there were three distinct debts, three distinct mortgages, and three distinct mortgagees. So, for the same reason, *Eastern Building & Loan Ass'n* v. *Denton*, 13 C. C. A. 44, 65 Fed. 569, does not apply. There two mortgages were given to the same person to secure different loans on separate lots. Subsequently the mortgagor deeded the two lots to different persons.

The decree is affirmed, with costs, and the case remanded for further proceedings.

The other Justices concurred.