MILLER *v.* McLAUGHLIN.

SAME *v.* WALKER.

APPEAL OF HUBBARD.

1. MORTGAGES—FORECLOSURE—PARTIES—REMAINDERMEN.
    Funds bequeathed to testator's children for life in equal undivided parts, remainder to his grandchildren or the issue of any deceased grandchild living at the termination of the life estate, were, by order of court, invested in a mortgage, of which the seller guaranteed payment, deeding other lands in security thereof. *Held,* that the guarantor could not defeat enforcement of the guaranty by objecting that children might yet be born who would have an interest in the fund, since the court which authorized the purchase had authority to see that the fund reached the proper parties.

2. TAXATION—INHERITANCE TAX LAW—APPLICATION.
    The inheritance tax law of 1899 (Act No. 188) has no application to the transfer effected by a will probated in 1865, devising an estate to testator's four children, each to hold an un-

divided one-fourth for life, and on the death of each life tenant an undivided one-fourth to go to the grandchildren then living or to the issue then living of any deceased grandchild.

3. GUARANTY — PAYMENT OF MORTGAGE — ENFORCEMENT — CONDITIONS PRECEDENT.

Where the owner of a mortgage sells it, and, as a part of the transaction, guarantees its payment, he cannot insist that the mortgage security be first exhausted before enforcement of the guaranty.

Appeal from Wayne; Donovan, J. Submitted April 25, 1905. (Docket No. 89.) Decided September 28, 1905.

Bills by Sidney T. Miller, trustee, against Joseph R. McLaughlin, Robert J. McLaughlin, Collins B. Hubbard, Anna Georgina Hubbard, George Dingwall, and others, to foreclose certain mortgage securities and by the same complainant against Bryant Walker, trustee, Louise M. Jebb, and the Detroit Savings Bank to enforce a trust. The suits having been consolidated and a decree entered for complainant, defendants Hubbard and Dingwall appeal. Affirmed.

*Miller, Smith, Alexander & Paddock*, for complainant.

*Willis G. Clarke*, for appellants.

MOORE, C. J. A reading of the opinions in *Re Beecher's Estate*, 113 Mich. 667, and *Biddle* v. *Biddle*, 117 Mich. 28, may aid in understanding the matters in controversy in this litigation. After the opinion was filed in *Biddle* v. *Biddle*, what was known as the "Biddle House Property" was sold. Some of the funds realized therefrom were by direction of the court invested in the purchase of the securities which are sought to be foreclosed in this proceeding. A history of the securities, taken from brief of counsel, but borne out in the record, is as follows:

"On March 13, 1893, Joseph R. McLaughlin and Robert J. McLaughlin, defendants in the first of the

above-entitled causes, and Charles C. Yemans and Edmund J. Owen, both since deceased, made a bond and mortgage to Margaret Woodbridge to secure payment of the sum of $121,115.    *    *    *

" The mortgage covered a part of private claim 671 in Ecorse, Wayne county, Mich.    *    *    *

" On July 24, 1895, Margaret Woodbridge assigned this bond and mortgage to Collins B. Hubbard and George Dingwall, who on the following day assigned them to George L. Beecher and Luther S. Trowbridge, administrators of the estate of Luther Beecher, deceased.    On the same day, July 25, 1895, Hubbard and Dingwall guaranteed to said administrators, their successors, and assigns, the payment of the bond and mortgage,    *    *    *    and to secure this guaranty Hubbard and Dingwall and their wives by warranty deed conveyed to George L. Beecher certain premises in Detroit.

" Mr. Beecher at the same time executed to Hubbard and Dingwall his declaration of trust, stating in substance that Hubbard and Dingwall had guaranteed the payment as aforesaid, and that the lands were conveyed to Beecher as security for said guaranty.

" On December 1, 1896, an agreement was made between Beecher and Trowbridge, administrators, and other parties in interest, including Collins B. Hubbard and George Dingwall, reciting, among other things, the bond and mortgage and the aforesaid assignments and guaranty thereof; that the interests of Edmund J. Owen and defendants McLaughlin were then owned by defendant Louise M. [Owen] Jebb; that the interest of Yemans was then owned by defendant John V. Moran; that the claim of said administrators upon said bond had been presented to the commissioners on claims against the estate of Edmund J. Owen, deceased, and it was agreed that said claim against the estate of Owen was thereby withdrawn, and said defendant Louise M. Jebb therewith delivered to said administrators $47,000 par value of the stock of the Cook Farm Company, Limited, to be held as additional security for the payment of said bond as thereby extended; that said defendants Jebb and John V. Moran thereby agree to pay to said administrators the unpaid amount of said bond, to wit, $118,394.99, $30,000 on or before July 1, 1898, and the balance on or before July 1, 1900, and interest from September 13, 1895, at the rate of 6 per cent. per annum,

payable semi-annually, and that the time of payment of said bond and mortgage was so extended; that the other parties to said agreement executed the same in token of their assent thereto; and that all of the then existing agreements and securities should remain in full force and effect, excepting as modified by said agreement.

" By agreement dated September 9, 1898, made by the parties in interest, including defendants Hubbard and Dingwall, the complainant, Sidney T. Miller, trustee, bought said bond and collateral securities. The said agreement recited the foregoing agreements and guaranty, and further agreed, among other things, that the amount of said bond was, as of September 13, 1898, $118,000 of principal, payable July 1, 1900, with interest thereon at the rate of 6 per cent., payable December 13, 1898, and every three months thereafter, until the whole of said principal sum should be paid, all payments to be made at the Detroit Savings Bank; and the time of payment of said bond and mortgage was thereby so modified and extended, and the said defendants Jebb and John V. Moran thereby agreed to pay the same to the said complainant herein. * * *

. " Said agreement also provided that all of the existing agreements and securities should remain in full force and effect, except as modified by said agreement. * * *

" Later it was arranged to substitute for the stock in the Cook Farm Company, Limited, certain real estate of said company on the Cook Farm, and accordingly, on December 28, 1900, with consent of parties, including Collins B. Hubbard and George Dingwall, said defendant Bryant Walker, trustee, executed a declaration of trust to the effect that the Cook Farm Company, Limited, had that day conveyed to him certain premises in Detroit, on the Cook Farm, which the said Walker held in trust, to sell and convey upon the written request of the Detroit Savings Bank, or of Sidney T. Miller, trustee, or both, the proceeds of such sale to be used: *First*, to pay all taxes and assessments which might be levied against said lands during the existence of the trust, and to pay all expenses connected with the formation and maintenance of the same. *Second*, to secure the Detroit Savings Bank for all advances which it might make from time to time to said Jebb for moneys required for the proper performance of said trust, not exceeding $25,000.    *Third*, to secure to said Sidney T. Miller, trustee, the performance by said Jebb of the agreement of September 9, 1898.

"Said Cook Farm Company, Limited, stock and land were obtained by Mrs. Jebb from the estate of her deceased husband, Edmund J. Owen, one of the makers of the original bond and mortgage in suit.

"On February 24, 1902, Sidney T. Miller, trustee, filed his bill of foreclosure against the lands originally mortgaged, and also the Hubbard and Dingwall lands.

"To this bill the defendants Anna Georgina Hubbard, Collins B. Hubbard, and George Dingwall demurred on the ground of multifariousness. Their demurrers were overruled in circuit court and on appeal. *Miller* v. *McLaughlin*, 132 Mich. 234.

"Thereupon the same defendants, Collins B. Hubbard Anna Georgina Hubbard, and George Dingwall filed their plea, which was overruled. The defendants took an appeal to this court, which was dismissed. The defendants moved this court to reinstate the appeal, which motion was denied. *Miller* v. *McLaughlin*, 135 Mich. 646.

"George Dingwall then applied to the circuit court to enter a final order overruling said plea. This application was denied, and then said defendant reappealed from the order overruling his plea, which reappeal was dismissed on the motion of complainant. *Miller* v. *Dingwall*, Supreme Court File No. 20,397 [no opinion].

"On July 1, 1902, the said Sidney T. Miller, trustee, filed his bill to enforce said trust against said Bryant Walker, trustee, Louise M. Jebb, and the Detroit Savings Bank.

"Such proceedings were taken that both of said causes came on to be heard, and the same were consolidated, and thereupon, on proofs taken in open court, the decree herein was entered.

"From said decree, Anna Georgina Hubbard, Collins B. Hubbard, and George Dingwall now appeal. The said Collins B. Hubbard and George Dingwall also appeal from the order overruling their plea, and the said George Dingwall further appeals from the refusal of the circuit court to make final the order overruling the plea."

Counsel say in the brief that under said decree a sale of all the lands described therein has been had, resulting in a deficiency of nearly $50,000. The defenses insisted on by the appellants, as stated by counsel, are five:

"*First.* The possibility of unborn heirs to the property

in question vitiates the scheme of this litigation in all its branches for lack of parties.

"*Second.* The existence of an inheritance tax as a lien upon all the real property given as security in these cases renders the State of Michigan a necessary party, and it has not been made a party.

"*Third.* The proceedings against these appellants are premature, and can only take place after exhaustion of the remedies which complainant has against the principal debtors.

"*Fourth.* Certain oral agreements made by the complainant with certain of the defendants, which resulted in extending the time of the principal indebtedness, have entirely released the appellants.

"*Fifth.* The consolidated cause is a four-fold litigation, with three branches of which the appellants are in no way concerned; but by reason of being improperly joined the entire burden of the defense has been cast upon them, and this improper joinder makes the bill multifarious."

As to the fifth of these defenses we think the question was settled by the opinion in *Miller* v. *McLaughlin*, 132 Mich. 234. As to the fourth defense we shall content ourselves with saying we have examined it, as presented by counsel, and do not think it well taken. The other defenses will be considered in the order in which they are presented.

*First.* Does the possibility of unborn heirs to the estate of Mrs. Biddle postpone the foreclosure of these securities until some indefinite time in the future, because the possible unborn heirs cannot be made parties? Counsel quotes from the provisions of the will, and then says in his brief:

"Yet it is apparent from the provisions of the will described above that grandchildren and great-grandchildren might be born subsequent to the partition suit, who, on account of the remainders being contingent, may, when the last child is dead and the effect of the will finally determined, have interests in the Biddle House property entirely unrepresented in the partition. On account of the advanced age of the two surviving children of Eliza F. Biddle, although in law it is always to be considered a

legal possibility, it is as a matter of fact improbable that any more grandchildren will be born; but new great-grandchildren are fast appearing in the world, some five or six having already been born since the partition case, one being specified by the witness Miller [the complainant] in his testimony, with the further statement that others existed, he knew not how many.

" Upon the death of a grandchild who may be parent of any of the lately born great-grandchildren before the death of the two remaining children, it will happen that, when the death of those children does occur, the at present unvested one-half of this property will vest in the great-grandchildren to the extent that their parent, the grandchild, would have taken. In short, the position of the appellants is that both the partition case and the present suit are defective for want of parties, and that no suit can be properly brought of the nature of the present litigation until the entire estate is vested by the death of the remaining children."

Mrs. Biddle died November 3, 1865, in which year her will was probated. The same question presented here was suggested in *Biddle* v. *Biddle*, supra. A reference to the opinion in that case will show that grandchildren and great-grandchildren were before the court. It will show how they were brought in. Parties having the same interest which an unborn heir would have in the estate, should it now come into the world, were before the court then. Their interests were fully represented. The complainant in this case, as trustee, represents grandchildren and great-grandchildren of Mrs. Biddle. We think the following proposition is applicable here:

" Parties by representation are interested persons not named as parties in the suit, but deemed to be sufficiently represented for certain purposes of the suit by parties thereto holding special relations to them. The doctrine grows out of convenience or necessity in the administration of justice. Especially is it applicable where the parties not before the court are only possible parties, not in esse, and where the interests of all parties in being require a decree which will completely and finally dispose of the subject-matter of the litigation. Such possible parties cannot, as a matter of course, be brought before the court

in person, and it would be highly inconvenient and unjust that the rights of all parties in being should be required to await the possible birth of new claimants until the possibility of such birth has become extinct. If persons in being are before the court, who have the same interest and are equally certain to bring forward the entire merits of the question, and thus give such interests effective protection, the dictates both of convenience and justice require that there should be a complete decree." Fletcher on Equity Pleading & Practice, § 33.

We have a case here where the defendants have had complainant's money, to secure the payment of which a mortgage was transferred by them and its payment guaranteed. The defendants have not lived up to their agreement, and, when complainant seeks to enforce his remedy, it is said by way of defense that children may yet be born who have an interest in the fund secured by the mortgage, and that it cannot be enforced for that reason until some indefinite period in the future. We think this defense has no merit. The court which authorized the purchase of this mortgage has ample authority to see that the fund secured thereby reaches the proper parties. See *Sill* v. *Ketchum*, Har. Ch. (Mich.) 423; *Cook* v. *Wheeler*, Har. Ch. (Mich.) 443; *Adams* v. *Bradley*, 12 Mich. 346; *Snook* v. *Pearsall*, 95 Mich. 534.

Is the second defense good? Counsel claim there is an inheritance tax due the State of about $500 under the provisions of Act No. 188, Pub. Acts 1899, and that the mortgage cannot be foreclosed until that tax is paid. It has not occurred to the officers representing the State that it has any claim for an inheritance tax, and the State is not asserting any such claim. Whatever claim any heir may have is conferred upon it by the will of Mrs. Biddle, which was probated in 1865. *Stellwagen* v. *Wayne Probate Judge*, 130 Mich. 166, is authority for the statement that our inheritance law is a substantial copy of the New York statute, and that the construction put upon it by the New York courts as a rule should control. The following cases are authority for the proposition that in a case

like the one at bar the inheritance tax law does not apply: *In re Seaman,* 147 N. Y. 69; *Matter of Pell,* 171 N. Y. 48 (57 L. R. A. 540).

Is the third defense well taken? This is based upon the claim that it was the duty to sell the land described in the original mortgage before a claim could be urged against the land of the appellants or against the appellants. This claim could, perhaps, be successfully urged, were appellants not guarantors of payment; but they were such guarantors. See *Johnson* v. *Shepard,* 35 Mich. 115; *Michigan State Bank* v. *Trowbridge,* 92 Mich. 217. The report of sale shows that all the land has been sold, and that there is still a deficiency of nearly $50,000. We do not think the third defense is well taken.

The decree of the court below is affirmed, with costs.

GRANT, BLAIR, MONTGOMERY, and OSTRANDER, JJ., concurred.