# Hannah A. Wilkinson v. Jacob Green and others.

*Foreclosure: Parties: Subsequent purchasers: Multifariousness.* A foreclosure bill which makes certain parties defendants as subsequent purchasers or incumbrancers is not multifarious because it alleges that such defendants claim some adverse interest.

*Foreclosure: Parties: Subsequent purchasers: Adverse title.* A title which is adverse and paramount to that of both mortgagor and mortgagee cannot be litigated in a foreclosure suit; but the question whether an asserted claim is such an adverse one as to come within this rule, depends not upon what is set up in the answer in regard to it, but rather upon what the bill charges and the proofs show to be its real character.

*Mortgage foreclosures: Subsequent purchaser: Releases obtained to cure defects: Adverse title: Decree.* Where a subsequent purchaser of the mortgaged premises from the mortgagor, has, in order merely to perfect his title of record, procured quit-claim deeds from the mortgagor's grantors under such circumstances as would render it fraudulent for him to set up such conveyances as a title adverse and paramount to that of the mortgagor, the mortgagee, under proper allegations in his foreclosure bill, may have such alleged adverse title declared null and void.

*Conveyances: Delivery of possession: Estoppel: Releases obtained to cure defects.* Parties who have obtained possession of lands from their grantor cannot afterwards repudiate his title, and all releases thereafter procured by them to cure defects in the title of such grantor must be held to have been obtained in support of, and not for the destruction of such title.

*Submitted on briefs April 14. Decided June 13.*

Appeal in Chancery from Ionia Circuit.

*Spaulding & Cranson,* for complainants, cited: *Van Rensselaer v. Kearney, 11 How., 322; Jackson v. Ball, 1 Johns. Cas., 91; Graham v. Meek, 1 Ore., 325; Cummings v. Freer, 26 Mich., 128; Wales v. Newbould, 9 Mich., 45; Payne v. Avery, 21 Mich., 524.*

*A. W. Dodge,* for defendant Ingalls, cited: *3 Mich., 448; 10 Ib., 453; 28 Ib., 125; 6 Paige, 637; 1 Ves., 120; 19 How., 271.*

MARSTON, J:

The bill in this case was filed to foreclose a mortgage executed by Jacob Green to Chauncey Lott, May 13, 1854,

and recorded October 19, 1854, to secure certain notes which were subsequently assigned to the complainant. The bill contains the usual formal allegation that defendants Ingalls and others claim to have rights in the premises as subsequent purchasers, etc., and alleges that defendants Ingalls and Woodruff also claim some interest or title in or to the premises, adverse to complainant's title, under two certain quit-claim deeds, one from John Estep, dated January 5, 1866, the other from Chauncey Lott, dated August 16, 1865, both to Charles W. Ingalls, grantor of Hall J. Ingalls and Woodruff; alleges that the Ingalls and Woodruff, at the time of the execution and delivery of these deeds, knew that Lott and Estep had no title to these lands, having previously conveyed them to the mortgagor Green, and that such deeds were obtained by Ingalls to cheat and wrong complainant.

Defendants Hall J. Ingalls and Woodruff answer jointly, admitting the execution of the notes and mortgage by Green, and that complainant owns the same; they deny that Green had any title or interest in the mortgaged property at the time he executed the mortgage, and deny that Lott ever conveyed these lands to Green; they set up that they are the owners of the lands in fee simple, each claiming in severalty, having purchased the same in good faith, paying a valuable consideration therefor, and without any knowledge that Green at the time the mortgage was executed had, or claimed to have, any title to the lands. Their answer also contains a demurrer to the bill for multifariousness. Replication was filed, the bill by stipulation dismissed as to Woodruff, proofs taken and a decree rendered in favor of complainant. To so much of the case as sought to litigate the alleged adverse title of Hall J. Ingalls under the deeds of Lott and Estep to Charles W. Ingalls, the grantor of Hall J., the bill was dismissed without prejudice. From this decree complainant appealed.

The first question arises upon the demurrer for multifariousness. This demurrer is not well taken. The bill contains the usual clause that these defendants claim some inter-

est in the premises as subsequent purchasers. This being so, any right which they thus acquired would be subject to the mortgage and would entitle complainant to the right to make them parties defendants for the purpose of foreclosing all interests which they derived from the mortgagor subsequent to complainant's mortgage.—*Horton v. Saunders, 13 Mich., 413.* Nor does the fact that the bill alleges defendants claim some adverse interest, protect them from being made parties as to the interest claimed by them which is not adverse.—*Ibid.*

The question still remains whether this alleged adverse interest can be litigated in this case. This depends not so much upon what defendant Ingalls claims in his answer, but upon the allegations in the bill and the testimony in the case as to the nature of the alleged adverse claim. Should it appear that defendant has a legal title, which, if valid, is adverse and paramount to the claim of both mortgagor and mortgagee, then undoubtedly this is neither a suitable proceeding, nor the tribunal the appropriate one in which to settle and determine that question.—*Summers v. Bromley, 28 Mich., 126.*

Should it appear, however, that Ingalls was in fact a subsequent purchaser of the mortgaged premises from the mortgagor, and that in order merely to perfect his title of record he afterwards obtained quit-claim deeds from the mortgagor's grantors, then I can see no good reason why the entire question, under the allegations contained in the bill, may not be disposed of in this case. The allegation in the bill is, that Ingalls claims some interest or title in the premises adverse to complainant under a quit-claim deed from John Estep dated January 5, 1866, and one from Chauncey Lott dated August 16, 1865, and that he and his grantor, Charles W. Ingalls, well knew at the time of the execution and delivery of these deeds that Lott and Estep had no title to said lands, having before that time conveyed the same to said mortgagor Green, whom they well knew was at the time of making said mortgage the owner in fee

simple of said premises, and that said quit-claim deeds were obtained fraudulently, etc.

This charge then is, that Green at the time he executed this mortgage in 1854, was the owner in fee simple of the premises described therein, and that he acquired his title thereto from or through Estep and Lott; that notwithstanding full knowledge of these facts on the part of defendant Hall J. Ingalls, and his grantor Charles W., they fraudulently, in order to cheat and wrong complainant, obtained the quit-claim deeds from Lott and Estep in 1865 and 1866. As before stated, the bill charges that Hall J. Ingalls claims an interest in the premises as a subsequent purchaser, and also that he claims this Estep and Lott title as an additional and adverse title. A title so acquired can in no sense be held adverse and paramount to the claim of the mortgagee. There is nothing therefore in the bill which will prevent our examining the facts in order to ascertain whether complainant is entitled to the relief asked for, viz.: an ordinary decree of foreclosure, and that the alleged adverse title of Ingalls may be declared null and void.—*Adams v. Bradley, 12 Mich., 346; Cummings v. Freer, 26 Id., 134.*

There is and can be no question but that Lott became the owner in fee simple of the premises in question upon the 10th day of February, 1853, under and by virtue of a warranty deed from John Estep, which deed purports to have been recorded upon the 17th of March, and also the 2d of June, 1853. Estep acquired his title from Charles W. Ingalls by warranty deed dated January 16th, 1853, and recorded March 17th, of the same year. There was nothing in the register's office to show that Lott had disposed of his title until August 22d, 1865, when a quit-claim deed dated August 16th, 1865, from him to Charles W. Ingalls was recorded. The mortgage in question from Jacob Green to Chauncey Lott, bears date May 13th, 1854, and was recorded October 19th, of that year. There was not then, nor has there been at any time since, any record evidence

in the register's office of any conveyance from Lott to Green, or of any title whatever in the latter. The evidence clearly shows, however, that on the same day this mortgage bears date a deed of the mortgaged premises was executed by Lott and wife to Green, and delivered to him, and that the mortgage in question was executed to secure a part of the purchase money. This deed could not be found, but both Green and Lott swear positively that such a deed was then executed and delivered, and their testimony in this respect is not weakened by any thing in the case, while the probabilities all point the same way. It also appears from Charles W. Ingalls' testimony, that Green entered into the actual possession of the premises in 1854, remained therein and was residing thereon January 15th, 1863, when under and by virtue of an agreement with him (Charles) he (Green) conveyed the premises to Hall J. Ingalls, Charles giving his own note for two hundred dollars to Green, as the consideration for such conveyance. As this was the first interest acquired by Hall J. to the premises, Charles not then claiming any interest therein, it may, perhaps, be best to here ascertain what the Ingalls supposed they were purchasing, and as the agreement was made, and the consideration paid by Charles W., and the deed given at his request to his son Hall J., we will speak of them together as being equally acquainted with the facts. Jacob Green testified that at the time he made the agreement with Charles W. Ingalls under which the conveyance to Hall J. was executed, he informed Charles of this mortgage given to Lott; that it was then held by one Wilkinson, and that Charles agreed to pay this mortgage in addition to the two hundred dollar note given by him to Green; that Charles then knew he, Green, had bought the premises from Lott, and he thinks he then delivered to Charles the deed of May, 1854, which he had received from Lott. Charles W. Ingalls testified as follows: "I lived not a great ways from Mr. Green, who occupied these premises at the time I first purchased them. He told me that he owned the premises. I purchased them

of him and paid him three hundred dollars for a quit-claim; after a time I was informed that he had no title. I then went to Mr. Lott, presuming the title to be in him; Mr. Lott informed me that such was the fact, that if I would pay him the remainder due him from Mr. Green, he would give me a deed. I was informed at the time Mr. Green went into possession of the premises, some five or six years previous. I understand he purchased of Mr. Lott."

It would seem to be clear therefore, that Green was in the actual possession of the mortgaged premises as owner thereof; that Charles W. Ingalls, with full knowledge of both the possession and claim of' ownership, purchased the premises from Green and had them conveyed direct to his son. If his testimony is to be believed, he then supposed that Green was the owner, and that he, Ingalls, was acquiring his, Green's, title. He does not deny that Green informed him of this mortgage and that he agreed to pay it as a part of the consideration; but even if he did not have such knowledge or make such an agreement, the mortgage was then properly recorded and he acquired Green's title subject to the obligations then of record against it. It also appears that in October, 1858, Green, by warranty deed, conveyed these premises to William Osman, as a security for certain moneys, Osman giving back an agreement to re-convey upon re-payment of the amount. This agreement to re-convey, together with tax receipts and other papers relating to the land, Green testified he delivered to Charles at the time of his conveyance to Hall J. in January, 1863. And it appears that a deed was obtained of the premises from Osman's executors to Hall J., May 5th, 1863.

When we come to examine the deeds subsequently obtained from Lott and Estep, we will find that Charles W. did not at that time suppose he was acquiring an independent adverse title to what he had received from and through Green, but one subordinate to it. In speaking of his purchase from Green, he says: "After a time I was informed that he had no title,—Mr. Lott informed me that such

was the fact, and that if I would pay him the remainder due him from Mr. Green, that he would give me a deed." He again says: "I asked him (Lott) for a deed of this land, he answered me like this: that there was a matter due him from Mr. Green that had never been paid, and that Mr. Green had never had a deed, nor I couldn't have one without paying him that amount of cash that Green owed him. I agreed to do it. He reckoned it up and it was between thirty and forty dollars in greenbacks. I paid it. I think it was somewhere near thirty-four dollars which he said Jacob Green owed him. I paid him that amount of money." He also testified that when he took his deed to the register's office for record, he was told that neither Lott nor Green had any title in the land whatever, that then finding the title remained in Estep, he purchased and took a deed from him. It is thus very evident that he was simply trying, if acting honestly, in this manner to perfect the title of record which he had acquired through Green. The consideration paid by him tends to the same conclusion. Although he valued the premises at sixteen hundred dollars, he only paid Estep and Lott one hundred dollars, while he paid to Green and the Osman estate, for the Green title, at least one thousand dollars. The facts all tend to show that the only title he acquired or supposed he was acquiring, he obtained from and through Green.

It is therefore apparent to my mind that Hall J. Ingalls did not acquire through the Lott and Estep deeds any adverse claim or title to the mortgaged premises; that having purchased from Green, who was in possession, and who was at that time both the legal and equitable owner of the premises, he thereby acquired Green's rights therein, which were subject to the payment of this mortgage; that knowing the parties through whom Green derived his title, if he, Ingalls, thought proper to adopt the course he did to perfect his title of record, in preference to other courses open to him, he did not thereby acquire any new and independent adverse rights which would relieve the land of the bur-

WILKINSON v. GREEN.

thens imposed on it by his grantor Green, nor change his own position from that of a subsequent purchaser to one who could be considered as having acquired an adverse paramount claim. Having first acquired Green's title, who was in the actual possession of the premises, they could not afterwards repudiate it, and all releases obtained by them. to cover defects in his title must be held to have been obtained in support of it, and not for its destruction.—*Farmers' & Mechanics' Bank v. Bronson, 14 Mich., 369.*

I am of opinion that complainant. is entitled to the relief prayed for, and that the decree of the court below should be changed and made to conform to this opinion, and that complainant recover costs in both courts in full.

The other Justices concurred.