THORNDALE MERCANTILE CO. et al. v. CONTINENTAL GIN CO.   (No. 6040.)

(Court of Civil Appeals of Texas. Austin. Nov. 3, 1919. Rehearing Denied Jan. 21, 1920.)

1. SEQUESTRATION ⬦══20—PROTECTION OF OB-LIGORS ON REPLEVY BOND GIVEN ON SEQUESTRATION OF MORTGAGED PROPERTY.

Under Rev. St. 1911, arts. 7103–7109, where a mortgagee of realty and personalty sued to foreclose his lien and sequestrated the property, and the successor of defendant mortgagor gave a replevy bond with sureties, decree awarding to plaintiff mortgagee the full amount of his debt against defendant mortgagor, also awarding recovery against the obligors on the replevy bond for the value of the personalty replevied as fixed by the verdict, with right in the obligors to deliver to the sheriff any portion of the personalty, and thereby relieve themselves from liability except for the value of such portion of the personalty as they failed to return to the sheriff, in no event to exceed plaintiff mortgagee's judgment against defendant mortgagor, fully protects the obligors in the replevy bond.

2. SEQUESTRATION ⬦══20—PROTECTION OF OB-LIGORS ON REPLEVY BOND GIVEN ON SEQUESTRATION OF MORTGAGED PROPERTY.

Under Rev. St. 1911, arts. 7103–7109, where a mortgagee seeks only to foreclose his lien on the property, if any portion is realty, and a replevy bond is given, all he is entitled to is to have the realty subjected to his debt; and if replevy bond was executed in the terms of the statute securing him against injury to, and for the rents of, the realty, the object can be accomplished without any finding or judgment concerning the value of the realty, which should be ignored in determining the extent of liability of the obligors on the replevy bond and their right to reduce it by returning the personal property.

3. MORTGAGES ⬦══48(2)—SUFFICIENCY OF DE-SCRIPTION IN DEED OF TRUST.

A deed of trust on "about three-fourths of an acre of land on the H. G. survey, in Milam county, Texas, three miles north of S. G., Texas," etc., executed by a gin company as security to the seller of machinery, held sufficiently to describe the property, free from ambiguity or uncertainty, and therefore not void for lack of description.

4. DEEDS ⬦══108—RELATION BACK OF QUIT-CLAIM DEED TO DATE OF A FORMER CONVEY-ANCE SOUGHT TO BE AIDED.

Where a quitclaim deed showed on its face it was executed to aid title to a company under which both parties to litigation claimed, by rendering more certain description of the property formerly conveyed to the predecessor of the company, and that it was not executed to convey to a third person property claimed to be owned by the company's remote grantor, it should be held to relate back to the deed of the former date from the company's remote grantor to its predecessor in title.

5. CHATTEL MORTGAGES ⬦══47 — DESCRIPTION NOT UNCERTAIN DESPITE INSUFFICIENCY OF LIST OF PROPERTY.

Chattel mortgage given as security on machinery sold the mortgagor, a gin company, by the mortgagee, held not void for uncertainty of description, though the list of the property did not of itself sufficiently identify it, in view of a stipulation that it was to be located on a certain gin lot identified by evidence.

6. CHATTEL MORTGAGES ⬦══150(1)—MORTGAG-ES ⬦══171(1)—REGISTERED INSTRUMENTS CON-STRUCTIVE NOTICE TO EXECUTION PURCHAS-ERS.

Registration of a deed of trust and a chattel mortgage, valid in their description of the property and otherwise, which created liens on the property in controversy, constituted constructive notice to parties seeking protection as innocent purchasers through an execution sale subsequently made upon a judgment.

7. CORPORATIONS ⬦══448(2)—ESTOPPEL TO DE-NY VALIDITY OF MORTGAGES EXECUTED PRIOR TO LEGAL ORGANIZATION.

Where property was sold to a corporation acting through its manager, was purchased for the use and benefit of the corporation, and the latter ratified the contract and the security mortgages by accepting and using the property, it is estopped to deny the validity of the security instruments, though they were executed prior to its legal organization as a corporation, and its successors are also bound by such ratification and estoppel.

Appeal from District Court, Milam County; John Watson, Judge.

Suit by the Continental Gin Company against the Thorndale Mercantile Company and others. From judgment for plaintiff, defendants appeal. Reformed and affirmed.

W. A. Morrison, of Cameron, O. D. Graham, of Thorndale, and A. J. Lewis, of Cameron, for appellants.

Coke & Coke, of Dallas, for appellee.

KEY, C. J. The following statement of the nature and result of this suit is mainly, though not entirely, taken from the briefs of the parties:

Appellee instituted the suit in the district court of Dallas county September 9, 1915. It was a straight suit for debt against the Redville Gin Company on four notes for $592.90 each, dated July 15, 1914, and to foreclose (1) a chattel mortgage lien upon certain gin property, including one 60x16 Frost high-pressure boiler, and one 11x16 Frost right-hand side-crank automatic engine, and (2) a deed of trust upon a certain gin lot, the latter being described as follows:

"About three-fourths of an acre of land on the Hugh Gray survey, in Milam county, Texas, three miles north of San Gabriel, Texas, and being the same land conveyed to I. N. Robinson by J. W. Davis and wife, Annie Davis, and afterwards conveyed to Redville Gin Com-

pany by I. N. Robinson and wife, Belle Robinson, and being the same land upon which the personal property hereinbefore described is situated."

Plaintiff set out the values of the various items of property, alleged that the Thorndale Mercantile Company was in possession thereof, averred that it feared it would injure the same, etc., and prayed for a writ of sequestration. The petition was duly sworn to by appellee's district sales manager. Appellee filed at the time of the filing of the suit proper sequestration bond. Thereupon the district clerk of Dallas county issued a writ of sequestration directed to the sheriff or any constable of Milam county, commanding him to take into his possession the personal property described in plaintiff's petition, and the real estate therein referred to, describing the latter as it was described in the petition, and stating that it was "the same land upon which the personal property hereinbefore described is situated." The writ was duly delivered to the sheriff of Milam county, and on the 10th of September he executed the same "by levying upon and taking into my possession all the within described real and personal property," which was then set out as in the petition and the writ, stating that the real estate sequestered was the same upon which the personal property was situated. Thereafter, on the 18th of September, 1915, the defendant Thorndale Mercantile Company replevied the property, and executed and delivered on that date to the sheriff of Milam county its sequestration bond, reciting the levy of the writ of sequestration, stating that thereunder the sheriff of Milam county "took into his possession the following described property, to wit," describing the personal property and real estate, as in the plaintiff's petition, and the writ of sequestration and the sheriff's return, and referring to the land as "being the same land upon which the personal property hereinbefore described is situated, and described in deed of trust from Redville Gin Company to T. R. Collett, trustee, dated July 15, 1914, recorded in volume 30, page 543, et seq." The condition of the bond is that "the Thorndale Mercantile Company will not injure the real estate, and that it will pay the value of the rents of the same in case it shall be condemned so to do; and further conditioned that the Thorndale Mercantile Company will not injure, illtreat, waste, or destroy the personal property, and that it will have said property, or the value of the fruits, hire, or revenue thereof, forthcoming to abide the decision of the court, or will pay the value thereof, and of the fruits, hire, or revenue of the same, in case it shall be condemned so to do." This bond was approved by the sheriff and duly filed with the clerk. Thereafter, plaintiff, having learned that one J. L. Adams claimed to have purchased the property on which it sought foreclosure, filed an amended petition, setting up the facts substantially as in its original petition, except that it averred that defendant Adams was claiming some interest in the property, and it asked that he be made a defendant, and called upon to assert his claim, or be forever barred. This latter petition was filed on the 3d of August, 1916. On March 19, 1917, plaintiff learned that one J. J. Robbins claimed to have purchased the gin, and that Gus Newton claimed certain vendor's lien notes arising out of the sale to defendant Adams, assumed by said Robbins; and thereupon it filed another amended petition, repeating substantially the facts of the first amendment, except it alleged that Newton and Robbins claimed an interest in the property in controversy, and they were called upon to assert their claims or be forever barred, etc. Both of the foregoing amendments contain the following allegation:

"That upon the institution of this suit a writ of sequestration was issued, and the property hereinbefore described was lawfully sequestered by the sheriff of Milam county. Thereafter the same was replevied by the defendant Thorndale Mercantile Company, and the aforesaid property delivered to it by said sheriff, and plaintiff prays that said sequestration, and all the proceedings therein, be maintained and continued in full force and effect."

It was also alleged by the plaintiff that the Redville Gin Company, though appellee supposed it was a corporation when it dealt with it, and though it was represented to be a corporation, as a matter of fact was not, because its articles of incorporation, though antedating the date of the notes and mortgage and deed of trust, to wit, bearing date June 4, 1914, were not filed in the office of Secretary of State until the 29th of July, 1914, about two weeks after the notes, etc., were made. The plaintiff alleged that the Redville Gin Company was promoted by certain named persons, that its charter was prepared, that meetings were held by these promoters, all of whom were to be, and later were, stockholders, and many of whom were to be, and later were, directors of the proposed corporation, authorizing the purchase of the machinery in question from appellee, and the giving of a lien thereon and upon the gin property, including the lot and houses, to secure the payment thereof. It also set up the fact that the personal property was shipped to the defendant Redville Gin Company after its incorporation, received by it with the knowledge and consent and approval of all of said promoters, stockholders, and directors, and with such knowledge, consent, and approval placed by the company upon its gin lot, and thereafter owned, claimed, and used by it; and the corporation ratified and adopted the original contract of sale and chattel mortgage.

Neither of the deeds referred to for descriptive purposes in the deed of trust from the Redville Gin Company to the Continental Gin Company was of record. One of them, to wit, the one from Davis and wife to Robinson, could not be found, and never has been found; and the other one, which was found, to wit, from Robinson and wife to the directors of the Redville Gin Company, contained an inaccurate description. Therefore plaintiff alleged the facts showing the description that was supposed to be contained in the lost deed, and alleged that the lot upon which the aforesaid machinery was located, and upon which foreclosure was entered in this case, was the lot intended to be described in the deeds referred to, and to be conveyed by the deed of trust, and that it was the only lot ever claimed or owned in that vicinity by said I. N. Robinson, grantor in the last-mentioned deed, or by the Redville Gin Company. The allegations give the details, and show and identify the property covered, and intended to be covered, by the deed of trust from the Redville Gin Company to plaintiff.

It was also alleged that Gus Newton, after the levy of plaintiff's writ of sequestration, procured a quitclaim deed from J. W. Davis and wife for the purpose of taking the place of the said lost deed from Davis and wife to Robinson, and for the purpose of curing any defect there may have been in the description in said deed; and this quitclaim deed plaintiff alleged inured to its benefit, and did not constitute an independent outstanding title as against the title covered by its deed of trust. Plaintiff also set out that the personal property sought to be foreclosed on was sold by it to defendant Redville Gin Company under a written order, which order itself constituted a mortgage thereon.

The defendants Thorndale Mercantile Company, Newton, Adams, and Robbins answered by general demurrer and numerous special exceptions, a general denial, and with a disclaimer to all of the real estate except the tract specially described in their answer.

It was further alleged that before the plaintiff instituted its suit the Thorndale Mercantile Company had recovered a judgment against the defendant Redville Gin Company in the county court of Milam county, Tex., and that afterwards said judgment had been duly filed and recorded in the abstract of judgment records, and by which it had acquired a lien upon all of the real estate in Milam county owned by the Redville Gin Company, and that in pursuance of said judgment the Thorndale Mercantile Company had caused an execution to be levied upon the tract of land described in the defendant's answer, and that the defendant Gus Newton had purchased this land regularly at the sheriff's sale and paid $100 in cash therefor, and that afterwards Newton had sold the same to the defendant Adams, for a cash consideration and certain vendor's lien notes, and afterwards Adams conveyed it to Robbins, and the defendant Robbins had assumed the payment of the Adams notes to Newton, and that afterwards Robbins had sold the land to Murrah, who was not a party defendant in this suit, and that he had received a cash consideration from Murrah, and had warranted the title, and was therefore liable as warrantor, and was entitled to protection as a purchaser for a valuable consideration without notice of any of the facts that would entitle the plaintiff to show that its liens were intended to cover the tract of land described in the defendant's answer.

The court submitted to the jury, and the jury found, the value of the several items of property seized under the writ of sequestration and replevied by the defendant. The court refused to submit any other issues to the jury, and upon the verdict referred to rendered a judgment in favor of the plaintiff, from which judgment the defendants Thorndale Mercantile Company, Gus Newton, J. L. Adams, and J. J. Robbins have appealed.

The written order given by the Redville Gin Company to the Continental Gin Company for the machinery in question was introduced by plaintiff. It is dated June 25, 1914, and described the personal property in question, and the notes that were to be given for the consideration, and contains, among others, the following provision:

"That said machinery shall remain personal property and become no part of the realty until paid for in full."

And also this:

"That this instrument shall be and is a mortgage on above-described machinery, and the undersigned does hereby convey and mortgage to you said machinery, to secure aforesaid freights and charges thereon, and aforesaid purchase price thereon, until said machinery has been settled for as above provided."

The order was accepted by the Continental Gin Company July 7, 1914.

In the chattel mortgage securing the notes the property is described as follows:

"All and singular the following described personal property, * * * to wit: 360 Saw Class C Feeders for Munger Huller Gins; 1 Hydraulic Power Press; 1 No. 6 Frost Heater; 1 4½x2¾x4 Duplex Pump; 1 Set Connections for Pump & Heater; 1 60x16 Frost H. P. Boiler; 1 Steel Casing with Gallows Frame; 1 11x16 Frost R. H. S. C. Automatic Engine. All of the aforesaid property is personal property, and is to be located in Milam county, Texas, and located upon the following described premises, to wit: On gin lot about nine miles north of Thorndale."

The personal property described in above mortgage was shipped by the Continental Gin Company to the Redville Gin Company,

taken off of the cars and placed upon the gin lot in controversy, where it has been since then. Said gin lot is about nine miles north from Thorndale and three miles north from San Gabriel. There is no other gin or gin lot in the vicinity. In the chattel mortgage the Redville Gin Company covenants that it—

"will not sell, assign, or dispose of aforesaid property or any part thereof, or attempt so to do, or remove, or attempt to remove, or permit the removal of, the same or any part thereof from Milam county, Texas, without the written consent of the said Continental Gin Company. * * * That if said property or any part thereof is taken out of * * * our possession, then all of the notes hereby secured shall, at the option of the said Continental Gin Company, at once become due and payable," etc.

The mortgage was dated July 24, 1914, and filed for record on the 30th day of July, 1914, and duly entered in the chattel mortgage records of Milam county. Said mortgage was signed by "Redville Gin Company, R. R. Wilson, Mgr.," and duly acknowledged by said Wilson. There is no corporate seal on said instrument. The company had none.

Plaintiff introduced in evidence its real estate deed of trust from the Redville Gin Company to T. R. Collett, trustee, conveying, as security for the four notes above mentioned, the following property:

"About three-fourths of an acre of land on the Hugh Gray survey in Milam county, Texas, three miles north of San Gabriel, Texas, and being the same tract of land conveyed to I. N. Robinson by J. W. Davis and wife, Annie Davis, and afterwards conveyed to the Redville Gin Company by I. N. Robinson and wife, Belle Robinson."

Said deed of trust contains the following covenant:

"And we [meaning grantor] forever covenant and agree with said trustee that we will at all times during the continuance of this trust, and as long as said notes or any of them remain unpaid, keep the buildings and improvements upon the above-described premises insured against loss by fire in some solvent insurance company, to the extent insurance can be obtained thereon, and will transfer the same * * * to said trustee," etc.

It is dated the 15th of July, 1914, signed "Redville Gin Company, R. R. Wilson, Mgr.," and duly acknowledged by said Wilson before a notary public. The instrument does not show any corporate seal, and, as stated, the company had none. It was filed for record July 30, 1914, and duly recorded in Milam county.

Plaintiff offered in evidence a certified copy of the charter of Redville Gin Company dated June 4, 1914. The incorporators of said company are "I. N. Robinson, J. B. Wilson, R. R. Wilson, J. B. Anderson, Grady Keith, S. W. Thorp, and J. L. Thomas et al., all of San Gabriel, Milam county, Texas."

The corporation is formed "to gin cotton"; the place where its business is to be transacted is "three miles north of the village of San Gabriel, Milam county, Texas"; and the directors for the first year are the following: I. N. Robinson, J. B. Wilson, R. R. Wilson, J. B. Anderson, Grady Keith, S. W. Thorp, and J. L. Thomas." The capital stock is $5,000.00. The charter is signed by J. B. Wilson, R. R. Wilson, and I. N. Robinson, acknowledged before W. A. Brown, notary public of Milam county, and the same was filed in the office of the Secretary of State the 29th of July, 1914. Attached to the charter is an affidavit made by J. B. Wilson, R. R. Wilson, J. B. Anderson, S. W. Thorp, Grady Keith, J. L. Thomas, and I. N. Robinson, the directors of the company, before W. A. Brown, notary public of Milam county, in which they "certify" that $3,000 of the capital stock of the corporation had been subscribed, as follows: I. N. Robinson, 33 shares, $1,650; R. R. Wilson, 5 shares, $250; J. B. Wilson, 5 shares, $250; J. B. Anderson, 5 shares, $250; Grady Keith, 4 shares, $200; J. L. Thomas, 4 shares, $200; S. W. Thorp, 2 shares, $100; R. F. Thomas, 1 share, $50; Sam Richards, 1 share, $50. As before stated, it will be noted this charter bears date June 4, 1914, prior to the date of plaintiff's notes and chattel mortgage and deed of trust; but it was not filed until the 29th day of July, 1914, several days after their execution.

The findings of the jury as to the value of the property are supported by testimony, and the material allegations in plaintiff's pleading relating to other matters are supported by undisputed evidence, which is quite voluminous, and need not be set out in full by this court, though some of it may hereafter be adverted to.

The trial court rendered a decree overruling the defendants' motion to quash the writ of sequestration, overruling their general demurrer and special exceptions to plaintiff's pleading, and awarding to the plaintiff a judgment against the Redville Gin Company for $3,347.90, together with interest thereon at the rate of 8 per cent., and foreclosure of the chattel mortgage lien upon the property described in the order of sale and chattel mortgage; also foreclosing the deed of trust and the lien created thereby upon the land described in the plaintiff's amended petition, upon which the case went to trial. Judgment was also rendered in favor of plaintiff against the defendants Thorndale Mercantile Company, and Gus Newton and G. W. Williamson, the sureties upon its replevy bond, for the sum of $3,923.50, that being the aggregate value of all the property as fixed by the verdict of the jury. The judgment sets out the value of each item of property, and provides that "the defendant Thorndale Mercantile Com-

pany shall have the right to return said property, or any portion thereof, under and in accordance with the terms of articles 7107 and 7108 of the Revised Statutes of Texas, upon pursuing the course therein prescribed within the time therein mentioned, and accordingly receive credit as therein provided." The decree then provides that, upon the return of any of the property in compliance with the statute referred to, the clerk shall issue an order of sale authorizing the sheriff or any constable of Milam county to sell such property as under execution, "in satisfaction of the judgment herein rendered in favor of the plaintiff." It then authorizes the issuance of execution against the Thorndale Mercantile Company and Gus Newton and G. A. Williamson, the sureties upon its replevy bond, for the value of such of the property as may not be returned, "so far and for such amount only as may be necessary to satisfy this judgment in the plaintiff's favor, or the unpaid part thereof, as the case may be." The decree further provides:

"It is further ordered, adjudged, and decreed that if all of aforesaid property is not returned as hereinbefore provided, and an execution as against said Thorndale Mercantile Company and Gus Newton and G. A. Williamson for the value of such as is not returned, plus the amount realized from the sale of such as may be returned, if any, does not result in the collection in full of this judgment in favor of plaintiff, then and in that event, and only in that event, the clerk of this court is authorized and directed to issue orders of sale directed to the sheriff or any constable of Milam county, directing him to seize and sell the personal property and real estate hereinbefore described that may not have been returned as aforesaid, as under execution, in satisfaction of this judgment, or any balance remaining unpaid as aforesaid; but the said personal property shall first be sold, and the said real estate shall be sold only in event the personal property shall not bring enough to satisfy the judgment in plaintiff's favor, or the unpaid part thereof, as the case may be."

### Opinion.

The brief filed on behalf of appellants contains 113 printed pages, and presents for the consideration of this court 35 assignments of error; appellee's brief embraces about 143 printed pages; and, while these facts are not referred to in a spirit of criticism, they are adverted to for the purpose of showing that it is not practicable, and perhaps would not be proper, for this court in its written opinion to treat the case with as much elaboration as the attorneys for the respective parties have done. Therefore, and without referring specifically to the various assignments of error, we shall now proceed to announce our conclusions upon what we deem to be the most important questions in the case, without adverting specifically to some other questions, all of which have been considered and are decided against appellants.

I. Appellants urge several objections to the form and amount of the judgment, their contention being, first, that no judgment should have been rendered against them in excess of the judgment rendered against the Redville Gin Company upon the notes sued on; second, that, as judgment was rendered against the appellants upon the replevy bond, it should have stipulated that, in the event they returned any of the property in accordance with the terms of the statute, they should have credit upon the plaintiff's debt for the value of the property so returned, as fixed by the verdict of the jury, instead of ordering the property sold and giving them credit for only the proceeds derived from the sheriff's sale of the property; third, that, as the court rendered judgment against them upon the replevy bond for $575 in excess of the judgment rendered for the plaintiff against the Redville Gin Company on the notes sued on, the judgment should have specifically prescribed that, after allowing credits resulting from the return of any of the property, none of the defendants should be liable to the plaintiff for any sum other than the balance due on the plaintiff's judgment against the Redville Gin Company; and, fourth, that no judgment should have been rendered upon the replevy bond for the value of the real estate.

These contentions require a construction of the following articles of the Revised Statutes:

"Art. 7103. *Defendant may replevy by giving bond.*—When property has been sequestered, the defendant shall have the right to retain possession of the same by delivering to the officer executing the writ his bond, payable to the plaintiff, with two or more good and sufficient sureties, to be approved by such officer, for an amount of money not less than double the value of the property to be replevied.

"Art. 7104. *Bond in case of personal property.*—If the property to be replevied, as provided in the preceding article, be personal property, the condition of the bond shall be that the defendant will not remove the same out of the county, or that he will not waste, illtreat, injure, destroy or sell or dispose of the same, according to the plaintiff's affidavit, and that he will have such property, with the value of the fruits, hire or revenue thereof, forthcoming to abide the decision of the court, or that he will pay the value thereof and of the fruits, hire or revenue of the same in case he shall be condemned so to do.

"Art. 7105. *In case of real estate.*—If the property be real estate, the condition of such bond shall be that the defendant will not injure the property, and that he will pay the value of the rents of the same in case he shall be condemned so to do.

"Art. 7106. *Return of bond and judgment thereon.*—The bond provided for in the three preceding articles shall be returned with the

writ to the court from whence the writ issued, and in case the suit is decided against the defendant final judgment shall be entered against all the obligors, in such bond, jointly and severally, for the value of the property replevied, and the value of the fruits, hire, revenue or rent thereof, as the case may be.

"Art. 7107. *Defendant may discharge judgment by return of property, etc.*—The defendant shall have the right, at any time within ten days after the rendition of the judgment provided for in the preceding article, to deliver to the sheriff or constable of the court in which such judgment is rendered, the property, or any portion thereof, which he has bound himself to have forthcoming to abide the decision of the court, and the sheriff or constable to whom such possession is tendered shall receive such property, if the same has not been injured or damaged since the replevy, and receipt to the defendant therefor, and shall immediately deliver such property to the plaintiff; and the defendant in such judgment shall, upon filing with the papers in the cause the receipt of the sheriff or constable, be credited by the clerk or justice of the peace upon such judgment with the value of the property so returned.

"Art. 7108. *When the property has been injured, etc.*—If the property tendered back by the defendant has been injured or damaged while in his possession under such bond, the sheriff or constable to whom the same is tendered shall not receive the same, unless the defendant at the same time tenders the reasonable amount of such injury or damage, to be judged of by such sheriff or constable.

"Art. 7109. *Execution shall issue, when.*—If the property be not returned and received, as provided in the two preceding articles, execution shall issue upon said judgment for the amount due thereon, as in other cases."

[1] When a plaintiff sues to recover property belonging to him, and sues out a writ of sequestration, and the defendant gives a replevy bond, and the plaintiff wins his case, no difficulty may exist in applying and enforcing the statute allowing the defendant and the sureties upon his replevy bond credit upon the judgment for the value of the property, for so much as they may return under and in pursuance of article 7107; but when it is undertaken to apply that statute where the plaintiff is only a mortgagee, asserting the right to foreclose a lien, and not seeking to recover title to or possession of the property, the construction to be placed upon the statute, with reference to such a case, is more difficult. The verdict of the jury may fix the total value of the property at a great deal more than the judgment rendered against the defendant for the principal debt. Notwithstanding which, article 7106 provides that, when the suit is decided against the defendant, judgment should be entered against the obligors on the replevy bond for the value of the property replevied, while article 7107 provides that for such property as may be returned and received by the sheriff or constable, the defendant shall be entitled to a credit for the value of the property as fixed

by the jury. When a plaintiff sues for the recovery of, and establishes his title to, property and also recovers upon a replevy bond given by the defendant, it may be that the statute modifies what would otherwise be his right to recover all the property, and confers upon the defendant who has given the replevy bond the right to retain as owner all the personal property replevied, and let the plaintiff's judgment against him and the sureties upon his bond be substituted for the plaintiff's right to recover such property; or that the defendant may, if he sees proper, return only a portion of the property and retain the balance, and as the plaintiff recovers that which has been returned, its value would be credited upon the judgment, and the title to the remainder of the property vest in the defendant, and the plaintiff be entitled to his execution against the defendant and the sureties upon his replevy bond for the value of the property not returned. However, that question is not involved in the matters now under consideration, and is not decided.

In the instant case the plaintiff does not sue as owner, but as mortgagee only. The mortgagor is a party to the suit, though it is not a party to the replevy bond, which was given by the Thorndale Mercantile Company, one of the other defendants. Not being the owner, the plaintiff did not sue for the recovery of title and possession of the property, but sought only to subject it to the payment of its liens; and the mortgagor, as well as the plaintiff, the mortgagee, has the right to have such liens foreclosed in the manner in which that result would have been attained if no replevy bond had been given. By pursuing that course, the rights of the mortgagor are fully protected, and the mortgagee is not compelled to become the purchaser of the property at a price fixed by other persons; but, if he so desires, he may purchase it at the foreclosure sale in order to protect his own interest. If it be held that by returning the mortgaged property, after it has been replevied, the mortgagee can be compelled to accept it as a pro tanto payment of his debt, at the value fixed by the jury, then he has been compelled to do that which the law would not require him to do in the absence of a replevy bond. If no replevy bond has been given, and the original debtor, or either of the other defendants, tenders to the plaintiff all of the mortgaged property in satisfaction of his debt, he is not compelled to accept it, and thereby release his entire debt; and we do not believe that the statute under consideration should be so construed as to accomplish that result. The plaintiff's right to have its liens foreclosed, and the property sold in pursuance thereof, and to have execution for whatever portion of its debt may remain unpaid, should not be destroyed merely because a replevy bond has

been given, and a jury has fixed the value of the property; and the same may be said in reference to the rights of the mortgagor, the Redville Gin Company.

In a proceeding of this kind, the jury may value the property at an amount regarded by the mortgagor as inadequate, and therefore he may prefer that the mortgage be foreclosed, thereby giving him an opportunity to bid on it when it is sold. Therefore, in order to protect the rights of both the mortgagor and mortgagee in this case, we hold that the trial court correctly decreed a foreclosure of the liens upon the property which might be returned by the obligors in the replevy bond. The manifest purpose of our sequestration statute is not to change, but to preserve and protect existing rights.

In other words, where the plaintiff sues to foreclose a lien, and sues out a writ of sequestration in order to preserve and protect the property subject to the lien, and the defendant gives a replevy bond, the decree should be so framed as to fully protect the rights of all parties; and it seems to us that when a decree awards to the plaintiff the full amount of his debt against the defendant primarily liable, and in addition thereto awards a recovery against the obligors upon his replevy bond for the value of the personal property replevied, as fixed by the verdict of the jury, with the right of said obligors to deliver to the sheriff or constable any portion thereof, and thereby relieve themselves from liability except for the value of such portion of the property as they fail to return to the officer, in no event to exceed the plaintiff's judgment against the principal debtor, the obligors in the bond have been fully protected. Of course, if the principal on the replevy bond is the original debtor, the decree should not release him from liability to the full extent of the debt; and, as between him and the plaintiff, the lien should be foreclosed upon the property returned, and only the net proceeds of the foreclosure sale credited upon plaintiff's judgment against him. In this case the bond was not given by the Redville Gin Company, the original debtor, but by the Thorndale Mercantile Co., who claimed title under the Redville Gin Company.

It may be that the trial court intended to render a decree in accordance with our holding; but inasmuch as it rendered a judgment against the Redville Gin Company for the amount of the original debt, and a separate judgment against the obligors on the replevy bond for $575 more than the original debt, and which does not specifically state that the credits provided for should be applied in satisfaction of the judgment against the Redville Gin Company, the original debtor, and that no execution should issue against the obligors upon the replevy bond in excess of the remainder of the plaintiff's judgment against the Redville Gin Company, we hold that the decree must be reformed in that respect.

[2] Furthermore, we sustain appellants' contention that in this case, where it does not appear that the real estate had been injured by any of the defendants, and where the rental value thereof was not an issue, and there was no finding of the jury in reference to either of those maters, the value of the real estate should have been ignored in rendering the decree. In other words, as to real estate the statute does not require that a replevy bond shall constitute a forthcoming obligation, because and for the obvious reason that a defendant cannot remove real estate; and it will be noted that article 7107, in prescribing the character of judgment to be rendered, and securing the rights to a credit for returned property, is limited to forthcoming replevy bonds, which are those relating to personal property as prescribed in article 7104. A replevy bond relating to personal property is properly denominated a forthcoming obligation, while such a bond relating to real estate is merely an obligation that the defendant will not injure the property, and that he will pay the value of the rents of the same in case he shall be condemned so to do. Where a plaintiff is seeking only to foreclose a lien upon the property, if any portion of it be real estate, and a replevy bond is given, all that he is entitled to is to have such real estate subjected to the payment of his debt; and if a replevy bond is executed in the terms of the statute, which will secure him against injury to and for the rents of the real estate, that object can be accomplished without any finding or judgment concerning the value of such real estate; and therefore the value of the real estate should be ignored in determining the extent of the liability of the obligors upon the replevy bond, and their right to reduce such liability by returning the property. Therefore, in this case the judgment will be reformed so as to conform to the views just announced, though the writer, speaking for himself only, does not regard that matter as of any particular importance in this case, as the obligors upon the replevy bond can relieve themselves from liability for the value of the real estate by surrendering possession thereof to the sheriff, and neither the mortgagee nor the mortgagor is complaining of that feature of the decree.

[3, 4] II. Appellants assail the deed of trust which was foreclosed by the decree of the court below, and contend, first, that it is void upon its face for want of sufficient description of the property; second, that the references therein given as part of the description of the land do not show that the land referred to is the land and premises upon which the decree of foreclosure was rendered; and, third, that such description, though entered of record, was not sufficient to

put appellants upon notice, and deny them protection as innocent purchasers for value.

We hold that the deed of trust contains a description of the property which is free from ambiguity or uncertainty, and therefore is not void for the lack of sufficient description. On the contrary, no question of the identity of the property can arise until an effort is made to apply the description on the ground.

The undisputed proof shows that I. N. Robinson had a gin located on the land in controversy prior to July 1, 1914; that on that date, and for a consideration of $3,000, he and his wife signed a deed, which was acknowledged October 15, 1914, and which deed was made to J. B. Wilson and certain other designated grantees, described in the deed as "directors of the Redville Gin Company, a corporation"; that the deed referred to was executed for the purpose of consummating a contract of sale by which Robinson and his wife were to sell the property in controversy to the Redville Gin Company, and in which deed the property was described as follows:

"All that certain tract or parcel of land lying and being situated in Milam county, Texas, a part of the Hugh Gray original survey, beginning at the line between R. R. Wilson and J. W. Davis at a point 100 yards from Alligator creek on the west side of the Lilac and San Gabriel road at an iron pin for corner; thence west 50 yards to an iron pin for corner; thence south 70 yards to an iron pin for corner; thence east 50 yards to an iron pin for corner; thence south 70 yards to place of beginning, containing $3500/4840$ acres of land."

There is an obvious mistake in that description of the land. It is impossible that two lines of the survey can run south and the survey close and include any land; but if the second line should run north instead of south, then the survey will close, and include the gin and all the buildings and other property involved in this suit. The following diagram will be of assistance in explanation of the matter:

It is reasonably certain that when the land was measured and the boundaries fixed the parties who did so started at the corner marked No. 1, measured from there 50 yards west to the corner marked No. 2, and from there north 70 yards to the corner marked No. 6, and from there east 50 yards to the corner marked No. 7, and from there south 70 yards to the place of beginning. It is quite clear from the undisputed testimony that the deed in question was executed for the purpose of conveying a tract of land

50x70 yards, and upon which the buildings and gin were located. To construe that instrument literally would run the survey from No. 1 to No. 2, from No. 2 to No. 3, from No. 3 to No. 4, and from No. 4 to No. 5, which would convey nothing whatever. But to change the second call by substituting the word "north" for the word "south," the instrument conveys the property which the parties thereto thought and intended that it should convey. It is true that, if the last call be changed by substituting the word "north" for the word "south," the survey would close and include the same amount of land; but it would not embrace the gin property, which the clear and undisputed evidence shows was the subject-matter of the contract of sale. Hence we hold that the obvious mistake in the description contained in the deed was in reference to the second call, and that the instrument should be construed as though that call was reversed, and read, "Thence north [instead of south] 70 yards." The deed recites the fact that it was signed by both of the grantors on the 1st day of July, 1914, which was prior to the making of the deed of trust in favor of the plaintiff; and while it was acknowledged after that date, and was evidently not delivered until after it was acknowledged, no doubt it was the Robinson deed referred to in the deed of trust sought to be enforced by the plaintiff.

It is true that the reference in the trust deed describes the property conveyed as "the same tract of land conveyed to I. N. Robinson by J. W. Davis and wife, Annie Davis, and afterwards conveyed to the Redville Gin Company by I. N. Robinson and wife, Belle Robinson"; and it is also true that no deed was produced from J. W. Davis and wife to I. N. Robinson, the testimony showing that the deed referred to had never been placed of record, and was lost; but the undisputed testimony given by both J. W. Davis and I. N. Robinson is to the effect that the lost deed conveyed to Robinson the tract of land upon which he subsequently established a gin, and which is the property now in controversy; and it was shown by similar testimony that appellant Gus Newton acquired his alleged title under execution sale against the Redville Gin Company, but procured from J. W. Davis a quitclaim deed to the land in controversy, which deed contains these recitals:

"Know all men by these presents, that whereas, heretofore I did, by my certain deed, give, grant and convey unto I. N. Robinson a certain lot, tract or parcel of land consisting of about ¾ of an acre of land north of Alligator creek, on the Lilac and San Gabriel road, in Milam county, to be held by him and his successors so long as it should be used and occupied as à gin site; and whereas, the said I. N. Robinson, by deed duly executed, did convey unto the Redville Gin Company, a corporation, the lot, tract

or parcel of land for gin purposes; and whereas, Gus Newton has purchased all the right, title and interest of the said Redville Gin Company in and to the said lot, tract or parcel of land with the property thereon; and whereas, it appears by the field notes in the deed originally given by me to I. N. Robinson that the tract, lot or parcel of land that the gin is actually located on is inaccurately described; and whereas, I desire to correct the said field notes so as to make it read correctly, covering the land that is actually occupied by the gin property."

Counsel for appellee make the contention that the quitclaim deed referred to, which shows upon its face that it was executed for the purpose of curing the inaccurate description of the property in controversy sought to be conveyed by the former deed, must be held to relate back to the date of the original deed from J. W. Davis and wife to I. N. Robinson, and therefore inure to the benefit of appellee, whose mortgage and other liens antedate the rights asserted by appellants; and in support of that contention they cite Wilkinson v. Green, 34 Mich. 221. The case referred to seems to support appellee's contention, and that contention, it seems to us, is sound upon principle. In other words, as the quitclaim deed referred to shows upon its face that it was executed for the purpose of aiding and supporting the title to the Redville Gin Company, under whom both parties claim, by rendering more certain the description of the property formerly conveyed by Davis and wife to I. N. Robinson, the grantor of the gin company, and was not executed for the purpose of conveying to appellant Newton property claimed to be owned by Davis, it should be held to relate back to the date of the former deed from Davis and his wife to I. N. Robinson. Thereafter J. W. Davis and his wife executed another quitclaim deed to Gus Newton, conveying the same property, but omitting the recitals. Hence we hold that the undisputed proof shows that appellee has a valid mortgage lien on the property in controversy.

[5] III. We also overrule appellants' contention to the effect that the chattel mortgage sought to be foreclosed is void for uncertainty of description. The undisputed proof shows that it was known to both the buyer and the seller that the personal property referred to in the chattel mortgage was purchased from the plaintiff by the Redville Gin Company for the purpose of having it placed in and upon the property in controversy; and while the list thereof, as contained in the mortgage, may not, in and of itself, sufficiently identify the property, the stipulation therein to the effect that it was agreed between the parties that it was thereafter to be located on a gin lot about nine miles north of Thorndale, in connection with the undisputed testimony that the gin lot in controversy in this suit is the only one answering that description, and at that time owned and controlled by the Redville Gin Company, and as the number and kind of articles therein referred to were thereafter delivered by the mortgagee, plaintiff, to the mortgagor, the Redville Gin Company, and were by the latter placed upon the gin lot in controversy, we hold that the chattel mortgage is not void for uncertainty of description. It does not appear that the Redville Gin Company has in its possession any property similar to that obtained from the plaintiff, and therefore the property intended to be mortgaged can be easily ascertained by following the terms of the mortgage. Cottingham v. Hill, 119 Ala. 353, 24 South. 552, 72 Am. St. Rep. 923, is an analogous case, and it was there held that the stipulation in the mortgage that the property was thereafter to be located or kept at a particular place, together with proof of compliance with such stipulation, could be looked to in aid of the other description of the property.

[6] IV. There is no merit in appellants' claims to be protected as innocent purchasers. They claim title through an execution sale to enforce a judgment procured by the Thorndale Mercantile Company against the Redville Gin Company, under a sheriff's deed to Gus Newton dated December 10, 1915, and deed from the Newtons to appellant Adams dated March 28, 1916, deed from Adams to appellant Robbins dated June 26, 1916. The plaintiff's deed of trust was filed for record and recorded July 30, 1914, and its chattel mortgage was filed for record on the same date. Having held that both of these instruments were valid and created liens upon the property in controversy, their registration constituted constructive notice to appellants, who seek protection as innocent purchasers through an execution sale thereafter made upon a judgment obtained by the Thorndale Mercantile Company against the Redville Gin Company. Carter v. Hawkins, 62 Tex. 393; Wiseman v. Watters, 107 Tex. 99, 174 S. W. 815.

In the cases referred to it is held that the rule declaring that one is affected with constructive notice only of what appears upon the face of a recorded instrument is subject to the qualification that where the description in the instrument is ambiguous, inconsistent in its parts, or correct in one particular and false in another, the record is such as to naturally excite inquiry, and under such circumstances it becomes the duty of the subsequent purchaser to make inquiry for the purpose of ascertaining what property was actually the subject of the instrument.

The instant case is much stronger than either of the two cases referred to, because the mortgage described the property as being the same tract of land conveyed to I. N. Robinson by J. W. Davis and wife, and after-

wards conveyed to the Redville Gin Company by I. N. Robinson and wife. It was also described as located on the Hugh Gray survey, in Milam county, Tex., three miles north of San Gabriel, Tex. There is really no ambiguity about that description; but, if it were ambiguous, the undisputed testimony renders it quite clear that any one, by inquiring of J. W. Davis and I. N. Robinson, would have ascertained the fact that they had formerly executed deeds intending to convey the property in controversy, and that the one from I. N. Robinson and his wife was made to the Redville Gin Company, and that the property had been delivered to that company, and was in its possession when the mortgages in question were executed.

Counsel for appellee made a strong contention to the effect that, aside from the question of constructive notice, the proof fails to show that appellants were innocent purchasers in good faith, but we find it unnecessary to decide that point.

[7] V. The undisputed proof shows that R. R. Wilson and several other persons agreed among themselves to organize a corporation to be known as the Redville Gin Company, for the purpose of operating a cotton gin. On June 4, 1914, a charter was prepared, reciting the fact that the persons referred to had formed themselves into a private corporation, etc. That document contained all that was required in a charter of a private corporation, and was signed by three of the persons referred to; but it was not filed in the office of the Secretary of State until July 29, 1914, and therefore it was not in fact a valid charter on the 15th day of that month, when the deed of trust was executed. However, the plaintiff alleged and proved that the property it had sold to the Redville Gin Company, acting through its manager, R. R. Wilson, was purchased for the use and benefit of the corporation, and that the latter ratified the contract, and the mortgages executed in pursuance thereof, by accepting and using the property; and we therefore hold that the corporation is estopped from denying the validity of those instruments, and that, as appellants claim under the corporation, they are also bound by such ratification and estoppel. Weatherford Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837.

There are several other questions presented in appellants' brief, several of which relate to matters of procedure only; and as this opinion extends beyond our customary limit, and covers what we regard as the most important questions, we forego any further discussion, and close with the statement that the other questions have received due consideration, and are decided against appellants.

For the reasons stated the judgment of the trial court is reformed and affirmed. The costs of the appeal will be taxed against the appellee.

Reformed and affirmed.